Quria per JOHNSTON, Ch.
Being directed by my brethren to announce the affirmation of the circuit decree, and to offer the reasons for this decision, I' cannot express them better than by referring to the opinion I lately delivered in the Circuit Court of Charleston, in the case of Buist & Dawes (a) upon the same *416 point; a copy of which accompanies this opinion. That decision was acquiesced in by the eminent counsel concerned.
It is ordered that the decree be affirmed, and the appeal dismissed.
DuNKiN, DakgaN and Wakdlaw, CO., concurred.

Appeal dismissed.

 George Buist. adm’r. vs. H P. Dawes, et al. This cause was heard in the Circuit Court of Charleston, in February, 1852, by Johnston, Ch., upon the following case stated, .and questions submitted, by counsel.
Edward Tonge devised his real and personal estate to his wife, during widowhood, with remainder, in case of her death, or marriage, to his mother, for life, — remainder to James Boone Perry for life, i. e. “the use thereof for life, and at his decease the said lands, slaves and premises shall be and is hereby vested in the male issue of the said James, (and in default of such in the issue female) surviving him ; and if a general failure shall be at the death of the said James, I give said land and slaves to my cousin, John W. Sommers, on the same terms, conditions, limitations and reservations as this is made liable to. in respect to James’s interest therein, in pursuance of this my will; and should there be a total failure of issue (immediate) on the decease of the said John W. Sommers, I give the said land and slaves, and the issue and increase of the female slaves to his (the said J. W. S’s.) brother , James D. Sommers, his heirs and assigns forever.”
The widow married again;, and testator’s mother succeeded to her life estate; and James Boo'ne Perry having died without issue,’in her life time, at her death the estate passed into the possession of John W. Sommers.
James D. Sommers died in the life time of James BoonePerry and John W. Sommers, intestate and without, issue.
John W. Sommers died in January, 1848, without issue, leaving a will.
At the death of James I). Sommers, his heirs at law, or distributees, were his sisters, Mary Buist and Henrietta Rowand, and his brother, John W Sommers, all deceased.
At the death of John W. Sommers, the heirs at law. or distributees of James D. Sommers, or persons then answering that description, were and are, his nieces and nephews, Mary S. Lamb, (wife of Jas. Lamb,) *416 Martha Buist, George Buist, Rev. Ed. T. Buist, Robert Rowand, Martha S Drayton, (wife of Alfred R. .Drayton,) and Mary E. Simons, (wife of Dr. Thos Y. Simons.)
At June Term, 1848, Chancellor Dargan held that the ulterior limitations of Edward Tonge’s will wore valid as to the personal estate; and that James D. Sommers took a contingent interest in the same that was transmissible to his personal representative; and that, at the death of John W Sommers without issue living, the said personal estate was distributable among them, and that those persons (parties to the bill) were to be regarded as the distributees of J. D. Sommers, who would fall within that description at the period of his death, and his or her or their legal representatives.
As to the real estate he held, that the terms of the devise created a fee conditional in James Boone Perry, and that, on his death without issue, the same reverted to the right heirs of testator, and ho adjudged Ann Perry to be enlilled to the same as the sole surviving heir of Edward Tenge; and he ordered that each party pay his own costs.
From this decision there was an appeal, on the following among other grounds :
That the real estate of Edward Tonge is, by his will, well devised over, on the deaths of James Boone Perry and John W. Sommers, without leaving issue, to James D Sommers in fee.
That both the real and personal estate of testator, on the death of John W. Sommers without issue, passed, under testaior’s will, to Jas. D. Sommers, and are distributable among the persons answering the description of heirs or distributees of James, at the death of John, and not among those, answering that description at the death of James, as decreed by the Chancellor, in relation to the personalty.
That the decree as to each party paying his own costs should be modified, several of the defendants being minors, one having filed a disclaimer. and several others having been made parties only to quiet the title to the property.
The Equity Court of Appeals, at January Term, 1S49, affirmed Ch. Daugan’s decree as to the personalty, but referíed to the Court of .Errors the construction of the will as to the real estate, and as to what estate Ja ires Boone Perry took therein under the said will, whether he took a fee conditional therein, anJ, if so, whether there *417 could be a limitation thereon, by way of executory devise, to John W. Sommers, and if he died without issue to James D. Sommers, (a)
The Court of Errors, at January Term, 1852, merely decided that James Boone Perry did not take a fee conditional in the real estate.
The following questions remain for adjudication.
1. Whether the limitalion over of the real estate in fee to James D. Sommers, on the death of John, without issue living, is valid 1
2. Whether if said limitation over be good, the said real estate is to be distributed among the heirs of James, at the death of James, or the heirs of James at the death of John.
Yeadon. The English rule is clear. 3 Cruise, 412, Tit. Descent; Fearne, 561, note a; 2 Wilson, 29, Goodright vs. Searle; 2 Hill, Ch. 550, Wilson vs. Freer. The Act of 1791, (5 Stat. 163,) has not altered this rule.
There is no express rule of English descents, except in the special cases where estates were to be distributed.
ilayne, contra. J. D. Sommeis takes a fee. It is contingent, but it is in a person designated. It is real estate : and transmissible, assignable, inheritable. 2 Mill, 94, McDonald vs. McMullan ; 2 Saund. R. 388, note, Purefoy vs. Rogers. He might devise or release it. By the 2d section of the Act personalty shall be distributed as realty is. 1 Hill, Ch. 268, Adams vs. Chaplin; 2 Id. 247, Deas vs. Horry; Id. 416, Edwards vs. Barksdale ; 2 Tuck. Bl. Append. 14, 16.
Memminger, same side. Devisable and distributable are, under our Acts, counterparts. Whatever can be devised, if not devised, is distributed.
Petigru, in reply. The Act of 1791 has not abolished the pre-ex-isting rule. It does not destroy the distinction between realty and personalty in the following particulars : 1. The real does not go the administrator : After as to personalty. 2. Descent is still the law of real : the personal is merely transmissible. 3. Alienage and citizenship still affect descent of real. 4. The order of liability for debts is not altered. 5. The statute does not abolish the difference in construction of deeds of real and personal.
Descent — connexion of blood. Seabrook vs. Seabrook, McM. Eq. 201, Act 1791, § 7 and § 9. The Act of 1791 relates to vested estates, and in that view the rule is as stated by Fearne, 559 ; Chancy vs. Graydon, 2 Atk. 616. The estate to James’s heirs is to arise only on John W. S’s. death.
Johnston, Ch. With much hesitation as to the propriety of taking cognizance of the questions submitted to me in this case, I have, at the urgent request of both parties, consented to hear them. My apprehension is, that those questions are properly before the Court of Errors, as part of ‘’■the construction of this will as to the real estate,” or *418 remain in the Court of Appeals in Equity, to be determined upon the return of the judgment of the Court of Errors.
The first question is free from difficulty. I understand the Court of Errors to have decided, that the estates of James B. Perry and John W. Sommers, and their issue, — preceding the limitation over to James D. Sommers, — are not fees conditional. Unless they are fees conditional, they must be either fee simple estates in James B. Perry and John W. Sommers, successively, or estates for life to them, with remainder to their issue in fee. In either case, the limitation over is after a fee simple, and is good, as an executory devise; for all the authorities agree that an executory devise may be limited after an estate of that character.
The second question is more difficult. James D. Sommers, to whom the estate was limited over in fee, died before the expiration of the prior estates; and the question is, whether the fee, which was limited over to him, is distributable among the heirs left by him and existing at his death, or among the heirs existing when the prior estates failed or expired.
It is tolerably plain how this question would have been decided in England.
“ The rules,” says Cruise, (b) “laid down in the preceding chapter respecting the descent of estates in possession do not apply to the descent of estates in remainder and reversion, expectant on an estate of'fiee-hold : because, where there is a preceding estate of freehold, the actual seisin is in the possessor of that estate, not in the person entitled to the estate in remainder or reversion. It follows, from this principle, that where a person entitled to an estate in remainder or reversion, expectant on a freehold estate, dies during the continuance of the particular estate, the remainder or reversion does not descend to his heir; because he never had a seisin to render him the stock or root of an inheritance : but it will descend to the person who is heir to the first purchaser of such remainder or reversion, at the time when it comes into possession.”
Upon the same footing stand executory devises, which are not regarded as mere possibilities, but as resembling contingent remainders, in respect to the transmissibility of the interest, (c)
But our statute of 1791 (d) provides, that “ where any person possessed of, interested in, or entitled unto, a real estate in his or her own right in fee simple, shall die, without disposing thereof by will, the same shall be distributed in the following manner,” &c. — among persons left by the decedent, and described in the eleven sections of the 1st clause.
Chancellor Harper, in the case of Adams vs. Chaplin (e) remarks on this statute, that “it has so far altered the English law, that actual seisin is no longer necessary to enable one who has a present title to an estate, to become the stock, or root, of inheritance. It provides for *419 distribution ‘where any person possessed of, interested in or entitled to a real estate, in his own right in fee simple’ shall die intestate. “ This, I suppose,” says he, “ would be held to apply to a reversion, or remainder, after an estate for life, or an estate tail, (if such were allowed in this country,) because such remainder or reversion is an estate of fee simple.” He held, however, in the particular case before him, which related to a mere right of reverter after a fee conditional, that it was not affected by the statute, but must go as at common law; because, according to the authorities, it was no estate in the land, but a mere jpossibility.
Estates, such as this of James D. Sommers, although contingent, are nevertheless coupled with such an interest as to render them distributable under the Act of 1791.
“ It seems now to be established,’’ says the note to Purefoy vs. Rogers, (f) “ notwithstanding some old opinions to the contrary that contingent and executory estates and possibilities, accompanied with an interest, are descendible to the heir, or transmissible to the representative of a person dying; or may be granted, assigned, or devised by him, before the contingency upon which they depend, takes effect:” and reference is made to Willes’s, Rep. 211, Goodtitle vs. Wood; 2 Burrows, 1131, Selwin vs. Selwin; S. C. Black. Rep. 251; 2 Wilson, 29, Goodright vs. Searle; 1 Black. Rep 605, Roe vs. Griffiths ; Moor vs. Hawkins, before Lord Northington, cited in 1 Hen. Black. 30, Roe vs. Jones ; and 3 Term Rep. 88, where Roe vs. Jones was affirmed in K. B. on error; Cas. Temp. Talbot, 117, King vs. Withers.
Cheves, Justice, in McDonald vs. McMullan, (g) speaking of a limitation over to a specified person, who died before the contingency on which he was entitled to the possession, says : “ It was argued that it was not a vested interest; and that, therefore, it was not transmissible. It is, perhaps, not a vested interest in the technical sense of that word. It is frequently called a possibility only. But it is nevertheless, vested in such manner as to be transmissible, and according to the later authorities transmissible by will. (Fearne on Ex. devis. 4th Edit. 522, 523; Cas. Temp. Talb. 123, King vs. Withers; Toml. 205.) It is only necessary that the person to take should be ascertained and certain to make such an interest transmissible, (Fearn, 4th Edit. 542, 546.) The point is very clear.”
If, under the English statute of wills such an interest is the subject of devise, much more is it so under our statute. The English statute enables those only to devise, “ who have manors, lands, tenements, or hereditaments : ” whereas our Act enables those who have lands, tenements, &c., “in possession, reversion, or remainder.” (h)
Now, our statute of distributions, in substance, proposes to distribute estates in default of their being “ disposed of by will.” If not disposed of by will, they shall be distributed according to that Act, which may be regarded as testamentum legis. It is conceded that *420 James D. Sommers might have devised his interests now under consideration; which is very near equal to admitting that, in default of a will op his part, those interests descended, immediately upon his death, to such distributees as he then left. 1
I am of opinion they did thus descend. Not that they became transmissible, and shifted from heir to heir, until the estate fell in, as in England ; but that the right passed upon his death, and fixed eo instanti in his distributees, only tb await a future enjoyment.
The only obstacle to an immediate descerit from ancestor to heir in England in such cases, was the want of seisin in the ancestor. But our statute of 1791, while it enlarges the class who are to take, effectually removes that obstacle by rendering seisin unnecessary to the inheritance.
There is a consideration, of great force, leading to this conclusion, which I have not yet mentioned : and it is that the statute, by its second clause, declares that “ the personal estates of intestates shall be distributed in the same manner as their real estates are disposed of by this Act.” (i) ,
I do not intend to say, that all distinctions between real and personal intestate estate, have been abolished by the statute. Very far from it. It is perfectly true, as has been argued, that the real goes immediately to the distributees, and the personal to the administrator. But the distribution of both is 'the same. The law makes them both liable for debts, and the personalty liable, in the first instance; but that impediment removed, the same persons succeed to the enjoyment of the property. '
Now, in this case, the personal estate has been adj.udged to the dis-tributees living at the death of',James Di Sommers : and il would establish a very unnecessary anomaly, if the real estate should be distributed differently.
It is true, also, that alienage is a disqualification to the right to distribution in the case of real estate, and not in that of personal; but that is a distinction introduced upon grounds of public policy, and does not affect the question before us. Alienage would operate as a disqualification to any particular heir, whether the inheritance be adjudged to, the heirs existing at James D. Sommers’s death, or at the falling in of the estate. The question before us is, which class of these heirs is to' take, leaving the particular disqualifications of the several heirs entirely out of the decision, and for a separate consideration.
Another distinction between real and personal property has not been abolished by the statute of 1791: the difference of construction of deeds — or other instruments by which they are to be conveyed, or assigned. This is true, as has been insisted. But what bearing has that upon the question of inheritance ?
My judgment is, that the inheritance fell upon the distributees left by James D. Sommers at his death; and let the decree be drawn accordingly.

 See the ease reported 4 Strob. Eq. 37.

 3 Cruise, Tit. 29, Descent, Ch. IV. Sec. I.

 Goodright vs. Searle, 2 wils. 29; McDonald vs. McMullan, 2 Mill, 94.

 5 Stat. 162.

 1 Hill, Ch. 269.

 2 Saund. U. 388, k.

 2 Mill, 94.

 P. L. 138.

 5 Stat. 163.